THE NATIONAL FIRE PROOFING COMPANY

*v.*

WILLIAM H. DALY et al.

[Decided June 28th, 1909.]

1. An assignment of money due a sub-contractor from the contractor for the construction of a municipal improvement did not give to the assignee any lien on the funds in the hands of the city to the credit of the contractor, under act of March 30th, 1892 (*P. L. 1892 p. 369*), providing for the attachment of such lien, until the sub-contractor had given the statutory notice required to perfect his own lien.

2. Creditors of sub-contractors for the construction of municipal improvements are entitled to a lien on the moneys due the contractor in the hands of the city under act of March 30th, 1892 (*P. L. 1892 p. 369*), giving such lien in favor of sub-contractors, their assigns, or legal representatives, &c.

3. Materialmen having furnished materials to a sub-contractor for the construction of a municipal building did not disable themselves from acquiring a statutory lien on money in the hands of a city applicable to the contract by taking an assignment of the sub-contractor's claim against the contractor.

4. Where a notice of a materialman's claim for a lien on money due the contractor for the construction of a municipal building for materials furnished a sub-contractor had appended a copy of the contract between such materialmen and the sub-contractor containing the terms, time, and conditions of the agreement as required by act of March 30th, 1892 (*P. L. 1892 p. 370 § 2*), the notice contained a sufficient statement of the terms of the contract.

5. Act of March 30th, 1892 (*P. L. 1892 p. 369 § 1*), gives a lien on money due a contractor for the construction of a city building to sub-contractors, materialmen, &c., on their compliance with section 2, which requires the service of a verified statement showing the amount of the

claim, that the materials were furnished to the contractor, and that they were actually used in the erection and completion of the contract with the city.—*Held,* that where a notice of a lien recited that there was due claimant from D., sub-contractor for the mason work on public school No. 9, $6,630.49 for materials supplied in accordance with the contract between claimant and D., all of which had been fully completed, and the affidavit recited that there was due and owing claimant from D. $6,630.49 for materials supplied on and about the construction of public school No. 9, in the city of Hoboken, the statement sufficiently averred that the materials were actually used in the erection and completion of the school under the contract with the city; the word "supplied" being used there in the sense of "furnish" and the word "about" being taken to mean "upon."

6. Where notice of a corporation's claim of lien on funds due the contractor for a public building for materials furnished a sub-contractor recited the state, under the laws of which the corporation was incorporated, it sufficiently stated the corporation's residence as required by act of March 30th, 1892 (*P. L. 1892 p. 370 § 2*).

7. Where the affidavit attached to a notice of a claim for a lien against the unpaid price of a public building contained no general verification, but merely asserted that the statement inclosed was a true account of the material furnished, together with the dates when the same was furnished, and the prices thereof as it appeared by the claimant's books, there was no verified statement of the terms and conditions of the claimant's contract required by act of March 30th, 1892 (*P. L. 1892 p. 370 § 2*), in order to perfect a lien, though the claim contained a statement of such facts.

8. Act of March 30th, 1892 (*P. L. 1892 p. 370 § 2*), declaring that before the whole work is completed, the claimant may file with the city's financial officer, notices stating the claimant's residence, verified by his oath or affirmation and stating the amount claimed, from whom due and if not due, when it will be due, the amount demanded, after deducting all credits and offsets, with the name of the person by whom employed or to whom the materials were furnished, and the terms, time given, conditions of his contract, and that the materials were furnished and actually used in the completion of the contract, did not mean that a verified notice stating the claimant's residence should be filed, and that another unverified statement reciting the additional facts should be filed, but that the claimant should file a single statement in which all the requisite facts should be verified.

9. Where a materialman's affidavit for a lien on funds due a contractor for a public building had attached thereto a paper styled "invoice" which, in addition to a recital of the date, kind of material furnished, and the prices, contained the words "Terms net 30 days. Goods f. o. b. New York," the claim contained a sufficient statement of the terms, time given and conditions of the materialman's contract as required by act of March 30th, 1892 (*P. L. 1892 p. 370 § 2*).

10. Act of March 30th, 1892 (*P. L. 1892 p. 370 § 4*), provides that no lien shall be binding unless an action is commenced within ninety days; section 6 authorizes the claimant to enforce his claim by a civil

action, and section 7 declares that the plaintiff must make all parties who have filed claims parties defendant, and that the court may decide as to the extent, justice, and priority of the claims of all the parties to the action.—*Held,* that a claimant was not required to bring suit to establish his lien within ninety days, where he had been made a party to a similar suit by another claimant.

11. Such section further declares that no lien shall be binding unless a notice of pendency be filed with the financial officer of the city, township, or other municipality.—*Held,* that, while only one *lis pendens* need be filed, if it gives the required information, a notice was insufficient to protect the lien of one of several claimants where it contained no reference to such claimant or its alleged lien.

12. Under act of March 30th, 1892 (*P. L. 1892 p. 370 § 4*), each claimant is not required to give separate notice in case his claim is specified in the notice of another claimant, yet each may give notice, and, if he does so, his notice will protect his own claim and those of others mentioned therein.

13. A materialman's notice of suit to enforce a lien on funds due a contractor for a public building required by act of March 30th, 1892 (*P. L. 1892 p. 370 § 4*), was not defective because it was in the form of a letter, instead of a paper entitled in the cause.

14. The Bankruptcy act of July 1st, 1898 (*P. L. 1898 ch. 541 § 1; 30 Gen. Stat. pp. 544, 545; U. S. Comp. Stat. 1901 p. 3418*), does not invalidate liens of sub-contractors, materialmen, &c., on funds due the contractor for the construction of a public building created by act of March 30th, 1892 (*P. L. 1892 p. 369*).

On final hearing on pleadings and proofs.

*Mr. Edward Q. Keasbey,* for the complainant.

*Mr. Gilbert Collins,* for Lawson & MacMurray.

*Messrs. Northrop & Griffiths,* for the Trussed Concrete Steel Co.

*Mr. J. Merritt Lane,* for the Alpha Portland Cement Co.

*Mr. Wayne Dumont,* for the trustee in bankruptcy of Daly.

STEVENS, V. C.

This is a contest over a fund of $11,219.86 paid into court by the board of education of the city of Hoboken, and admitted to be due from Alexander Whan, the contractor, to William H.

Daly, a sub-contractor, in the erection of a public school in Hoboken.

Daly partially performed his contract and then failed. The following persons and companies filed verified notices of their claims for labor performed and materials furnished under the act of 1892 (*P. L. 1892 p. 369*), an act intended to secure to workmen and materialmen payment of their several claims out of any unpaid money due to the contractor from the municipality.

The claims and dates of service of notice are as follows:

```
      1908.
Jan.  13. Trussed Concrete Steel Co...........$6,630 49
 "    22. National Fire Proofing Co............ 2,740 26
 "    28. Lawson & MacMurray................ 3,000 00
 "    30. American Safety Tread Co........... 689 00
Feb.  13. Herbert J. Bessant.................. 115 00
Mar.   5. John Hart ........................ 35 00
 "    "  Michael P. Gillis.................... 70 00
April  4. Alpha Portland Cement Co........... 1,444 74
```

Lawson & MacMurray claim priority over all the other claimants on the ground that they have, in addition to their verified notice, an assignment from Daly of moneys due from Whan antedating the filing of any of the notices.

The Alpha Portland Cement Company claims that the notices of the Trussed Concrete Steel Company, the National Fire Proofing Company and the American Safety Tread Company are defective, and therefore create no lien. The trustee in bankruptcy urges the same defects and says further that, as against him, the notices are invalid under the Bankruptcy act.

I will first consider the effect of the assignment. It reads as follows:

"NEW YORK, Dec. 21, 1907.

"*Mr. Alexander Whan, Hoboken, N. J.:*

"DEAR SIR—I hereby authorize you to pay to Lawson & MacMurray, a corporation, the sum of three thousand dollars ($3,000.00) with interest from this date and which amount is for material furnished by them to me for School No. 9, out of any money that may be due to me after this date, and I hereby assign to said Lawson & MacMurray, out of the monies that are due and owing by you to me or which shall hereafter become due from you to me on account of said building the said sum of Three thousand dollars ($3,000.00).

"WM. H. DALY.

"Witnessed by A. H. Sims.
"Dec. 23/07."

If this had been an assignment by Whan of moneys due and to grow due from *the City,* it would be governed by the case of *Somers Brick Co.* v. *Souder, 71 N. J. Eq. (1 Buch.) 759,* in which it was held by the court of errors and appeals that an assignment of a contractor's claim upon a municipality, prior in time, is prior in right. But this is not an assignment of a debt due from a city, but of a debt due from a contractor to a sub-contractor. That they are not identical—not an assignment of the same thing—is evident. Until Daly, by giving the statutory notice, had himself obtained a lien upon the funds in the hands of the city, Whan was under no obligation to pay any of it to Daly. He might have lawfully satisfied the amount due out of any other money in his hands. The debt due from Whan to Daly was in no sense part of the debt or fund due from the city to Whan. By the very terms of the statute the debt due from Whan to Daly was subordinated to the claims of those of the workmen and materialmen who gave the statutory notice, and if Daly assigned what was due from Whan to him he did it subject to their paramount right.

It was for some time a matter of doubt whether the creditors of sub-contractors had any lien upon the money in the hands of the city (*Somers Brick Co.* v. *Souder, supra*), but this doubt has been removed by the decision in *Herman & Grace* v. *Freeholders, 71 N. J. Eq. (1 Buch.) 541,* affirmed on appeal. If this class of creditors have such lien, it is necessarily paramount to Daly's right as an unsecured creditor to be paid by Whan, and therefore anyone claiming through Daly takes Daly's right and nothing more. Suppose Daly himself had given no notice, can anyone doubt that those who gave notice would not have had the precedence, and suppose Daly gave notice, would not those who took by assignment from him stand only in his shoes, with such priority or right as he had acquired by virtue of that notice, and nothing more?

Lawson & MacMurray do not, however, rest alone upon their assignment. They, too, gave a notice, which is third in order of date, and which, without doubt, conforms to all statutory requirements. It is too plain for argument that they did not

disable themselves from acquiring the statutory lien by taking the assignment.

I will next consider the claim of the Trussed Concrete Steel Company. It is said that its notice is imperfect—*first,* because it does not contain a statement of the terms, time given, and conditions of its contract; *second,* because it does not state that the materials were actually used in the erection and completion of the contract with the city, or even in the erection of the school; *third,* because the company did not give notice of the pendency of its suit.

As to the first objection I need only say that the notice has appended to it a copy of the contract between the Trussed Steel Company and Daly, and this contains the terms, time and conditions required by the statute. It was, indeed, intimated, though not decided, by Vice-Chancellor Pitney in *Hall* v. *Jersey City, 62 N. J. Eq. (17 Dick.) 489,* that the contract referred to in section 2 of the act of 1892 was not the contract between the materialman and the contractor, but the contract between the contractor and the city. This view has not as yet been adopted by the court of errors and appeals. Justice Collins, speaking for himself and some other members of the court, was unwilling to accept it as correct, but the point was not decided. The municipality does not need information about the terms of the contract between itself and the contractor, but it may be important for it to know what are the terms and conditions of the contract of the claimant with *his* contractor, be such contractor either the original contractor or a sub-contractor. It appears to me that the view of Justice Collins is the more reasonable.

The second objection is more serious. The statute in section 1 provides that any person who shall, as laborer, merchant, &c., perform any labor or furnish any material "on complying with the second section of this act," shall have a lien for the value of such labor or material upon the moneys in the control of the city, &c.

Section 2 provides as follows:

"*And be it enacted,* That at any time before the whole work to be performed by the contractor for any such city, town, township or other municipality is completed or accepted by said city, town, township or

other municipality, and within fifteen .days after the same is so completed or accepted, any claimant may file with the chairman or head of the department, council, board, bureau or commission having charge of said work, and with the financial officer of said city, town, township, or other municipality, notices stating the residence of the claimant, verified by his oath or affirmation, stating the amount claimed, from whom due, and if not due, when it will be due, giving the amount of the demand after deducting all just credits and offsets, with the name of the person by whom employed, or to whom the materials were furnished; also a statement of the terms, time given, conditions of his contract, and also that the labor was performed or materials were furnished to the said contractor, and were actually performed or used in the execution and completion of the said contract with said city, town, township or other municipality, but no variance as to the name of the contractor shall effect the validity of the said claim or lien."

It will be seen that the lien given by section 1 is made dependent upon a compliance with the provisions of section 2. One of the things required to be stated by section 2 is "that the materials were furnished to the said contractor and were actually　*　*　* used in the execution and completion of the said contract with said city." The fact that the labor and materials went into the building constitutes the equitable foundation upon which the statute rests. The legislature deemed it reasonable that that which went into the work should be paid for out of its price. Obviously, if the contractor has diverted the material to some other object, the claim is properly not against the building or its price but against him.

Although I take this view of the subject, I have, nevertheless, with considerable hesitation, come to the conclusion, looking at the notice proper, the contract and the affidavit appended to it as all parts of one statutory notice and statement, it does sufficiently appear that the material was actually used in the execu- tion of the contract with the city.

The notice says:

"There is due to us from Wm. H. Daly, sub-contractor of Alexander Whan, contractor, for the mason work on Public School No. 9　*　*　* $6,630.49 for materials supplied in accordance with the contract between us and the said Wm. H. Daly, all of which is fully completed."

The affidavit says:

"There is due and owing to said claimant from said William H. Daly the sum of $6,340.49, for materials supplied in and about the construction of public school No. 9 in the City of Hoboken."

The antecedent to the words "all of which is fully completed" are the words "mason work." It is, therefore, stated that the mason work on the building has been fully completed. If this were all it would not be a necessary implication that the "reinforcing steel" furnished by the claimant to the sub-contractor was actually used in the work. The mason work might have been completed by means of some other kind of construction or by means of girders, &c., furnished by someone else. But the affidavit appears to negative this possibility when it says that the money is due for the material—that is, the reinforcing steel—supplied *in and about the construction of the school.* One of the meanings of "supply" is "furnish." If the materialman furnished the steel wanted in the construction of the school, and the work in which it was wanted was "fully completed," and if, moreover, it was supplied in and "about" (which latter particle, I think may be taken as meaning "upon") the construction, the inference would seem to be unavoidable that the material was actually used in the execution of the contract with the city. It is a fair inference, in the absence of proof to the contrary, that "full completion" was completion according to the contract.

As it has never been held that the very words of the statute must be repeated in the notice I am inclined to think that what is stated, taken as a whole, amounts to the same thing. As was very recently said by the court of errors and appeals in the somewhat analogous case of a chattel mortgage, whose statutory affidavit of consideration was attacked, "it is immaterial that it was inartificially drawn and not technically precise." *Howell* v. *Stone, 71 Atl. Rep. 914.* The third objection, which affects other claimants as well, I will consider later.

The claims of the National Fire Proofing Company and the American Mason Safety Trust Company may, conveniently, be considered together, because, except in their statement of amounts and persons, they are expressed in the same terms. The claims consist of a notice, an affidavit and a transcript of the book account. The objection to them is threefold. It is said (1) that

they do not state the residence of the claimant; (2) that they do not contain a *verified* statement of the "terms, time given and conditions of the contract," and (3) that no notice of pendency of suit was given.

The first objection is disposed of by the case of *Hall* v. *Jersey City, supra.* Vice-Chancellor Pitney there observes that the only proper residence of a corporation is the state in which it is incorporated. The state of incorporation is given in each of the claims. Had the statute required the place of business to be stated the objection would have been more serious.

The second objection involves the proper construction of section 2, quoted above. The act was called by Justice Collins in the *Hall Case* "crude legislation." If this may be said of the act as a whole, it is also true of the section under consideration. The question is how far does this ambiguous section require the claimant to verify his claim.

I think it will be conceded that something more than verification of the claimant's residence was intended. The collocation of the words is unhappy but it is not to be supposed that the legislature intended to require that an unimportant fact should be verified and that all the important facts should be left unverified. But if more than verification of the residence be conceded, then it is difficult to believe that the legislature intended that the most important fact of all—that which, as I have said, constitutes the *raison d'être* of the act, to wit, that the labor or material went into the building, should not be verified. It is possible, of course, to argue that the verification should extend not only to the residence but to all the particulars down to the words "also a statement," but I hardly think it was designed to require two papers, first, a notice, verified by affidavit, containing a statement of the less important particulars, and secondly, a statement, unverified, containing the controlling fact. The whole scope of the section points to a single verified notice, including *all* the required particulars. If the word "containing" be implied before the words "a statement of the terms," &c., the difficulty in construing the clause vanishes. The change from the participial construction "stating," "giving" to the substantive "also a statement" cannot weigh much in the construction of this

clumsy and ungrammatical clause. The very draughtsman of the notice under examination had no idea that he was to prepare first a notice verified by affidavit and then an unverified statement. He has included all the particulars in one notice. The difficulty is that he has verified only some of those particulars.

This view accords with common practice, for, as far as I am aware, no one has thought it necessary to file first a formal notice of certain particulars, verified by oath, and then a formal statement of other particulars.

It may be proper to remark that whichever way this case is decided, some of the claimants will be unjustly excluded. If the word "his" be held to refer to the contract of the sub-contractor with the contractor, or the contract of the contractor with the city, then the claim of the Trussed Concrete Steel Company, already considered, must be excluded, for it contains a statement of the terms and conditions of neither. If the word "his" be construed as referring to the contract of the Fire Proofing company then its claim will be excluded for the reason I am about to state. If both claims should be deemed free from objection, then the claim of the Alpha Portland Cement Company, whose verification is in all respects full and satisfactory, will not be paid for the fund will be exhausted by the preceding claimants. The fact is that inasmuch as the price of the building is treated as a fund to be distributed among those whose labor and materials have actually gone into the work, it would seem that it ought to be divided, *pro rata,* for all these claimants stand upon an equally meritorious footing. It is not a case to which the maxim *qui prior est in tempore, potier est in jure,* is properly applicable. Such, however, is not the statutory scheme and the court must enforce it as it finds it.

I cannot find in the claim of the Fire Proofing company a *verified* statement of the terms and conditions of its contract. The so-called *claim* contains such a statement, but the *affidavit* appended to it does not. The affidavit contains no general verification. It asserts merely that "the statement hereto annexed is a true account of the said material * * * together with the dates when the same were furnished and the prices thereof as appear by the books of the company." In *Hall Co.* v.

*Jersey City, 64 N. J. Eq. (19 Dick.) 766,* the court of errors
and appeals held that as the testimony showed there were no
terms, time given or conditions, there were none to be stated.
The fire proofing company's claim cannot be sustained on any
such ground.    It has not proved that there were no terms,
time given, or conditions.    On the contrary, its *unverified* notice
of claim shows that there were.    It may be urged that "the state-
ment hereto annexed" should be held to include not only the
paper headed "statement" but also the notice.    But both the
notice and the affidavit evidently refer to the "statement hereto
annexed" as a separate and distinct paper—the paper that con-
tains the transcript from the books of account.    To hold that it
included the matter contained in the notice would be to hold
something that the affiant never intended to assert.

I have more difficulty with the claim of the Tread company.
The affidavit is identical with that of the Fire Proofing company,
but the statement thereto annexed is not headed "statement"
but "invoice," and it differs from that of the fire proofing com-
pany in saying, in addition to the date, kind of material and
price, as follows: "Terms net 30 days.    Goods F. O. B. New
York."    This appears to be stated in connection with the price
and as affecting it, which it probably does.    If this be included
in and be part of the true account of the material furnished with
the dates and prices, it is verified by the affidavit.    I am in-
clined to hold, as a matter of construction, that it is.    This,
however, does not save the claim as will be shown presently.

It is furthermore insisted, as against the Tread company and
the Trussed Steel Company, that they cannot participate in the
fund because they commenced no action within ninety days from
the filing of their lien.    *Somers Brick Co. v. Souder, 70 N. J.
Eq. (4 Robb.) 388,* is relied upon to support this contention.
That case does not appear either to discuss or to decide the pre-
cise question here involved, which is whether, if a suit be com-
menced by a lien claimant within ninety days and the other lien
claimants are made parties and answer, the defendants thus
made parties must each commence a separate suit, in order to
preserve their respective liens.    The insistment seems to be
answered by section 7 of the act, which provides that the

plaintiffs *must* make all parties who have filed claims parties defendant and that the court *may* decide "as to the extent, justice and priority of the claims of *all* the parties to the action." When it is considered that this is the general practice in equity and that the statute in question has been construed by our highest court to afford an equitable and not a legal remedy (*Delafield Construction Co.* v. *Sayre, 60 N. J. Law (31 Vr.) 449*), it would seem that a single suit is all that is required. There is nothing in the statute that, as far as I can see, even suggests a different construction. Section 6 does, indeed, say that any claimant *may* enforce his claim by a civil action, but this section does nothing more than authorize any claimant who has a cause of action to enforce it in the way prescribed by section 7, namely, by making all persons who have filed claims parties. The act nowhere declares that the penalty of not suing as plaintiff shall be the loss of the lien. Section 4 only prescribes that no lien shall be binding unless *an* action be commenced within ninety days. If the act were as clear in other respects as it is in this I should think it above criticism. The New York cases are in accord with this view. *5 N. Y. Sup. 913; Neuchatel Asphalt Co.* v. *Mayor, 33 N. Y. Sup. 64; 155 N. Y. 373.*

What seems to me, however, to be a fatal objection to the Tread company's claim is that it gave no notice of the pendency of suit nor did any other party give a notice which named it. Section 4 reads as follows:

"No lien provided for in this act shall be binding upon the property therein described unless *an* action be commenced within ninety days from the filing of the same and a notice of pendency of said action be filed with the financial officer of said * * * municipality."

As section 7 expressly says that the plaintiff *must* make all parties who have filed claims parties, it would seem reasonably clear that when section 4 says that *a* notice must be filed, one notice only is required if it gives the necessary information. Such was the view of the supreme court of the State of New York, from which state our act was taken, in *Newman Lum. Co.* v. *Wemple, 107 N. Y. Sup. 318.* In the appellate division the court says: "The main object of filing a notice of pendency is

to furnish people who are interested in the property or fund with a knowledge of what is going on, and that certainly was done by the notice of pendency filed by the plaintiff. * * * I do not think it necessary for each of the defendant lienors to file separate notices of the pendency of the action. It was entirely sufficient if the plaintiff filed a proper notice, *including the names of the defendants to save their* rights as lienors."

Three of the parties gave the statutory notice but none of them mentioned the Tread company as a defendant or party to the proceedings. The Tread company is therefore excluded from the benefit of the notices, if the Appellate Division rightly interpreted the act. That it did so seems to me apparent. The notice must be actual notice; not information that will put the financial officer on an inquiry that may, if pursued, lead to notice. The question, then, is what minimum of information will satisfy the statute. I think that the notice must at least state the general character of the suit and the parties complainant and defendant who would avail themselves of its benefits.

If the financial officer should be notified only that A had sued B, surely that would not be enough, and if he should be notified that a proceeding to enforce claims against the board of education had been begun, the parties not being named, that would give no information. It is argued that the subpœna served upon the board was notice to its financial officer. No doubt it would be if the statute had not, in addition to suit commenced, required notice to a particular officer. It is not pretended that the subpœna was served upon this officer. What Vice-Chancellor Grey tersely said in *Somers Brick Co.* v. *Souder, 70 N. J. Eq. (4 Robb.) 390,* is true here. "The statute creates a right of action which, theretofore, had no existence. It prescribes certain conditions and limitations and declares that if they be not observed, the right given only by the statute shall not arise or shall be defeated."

How strictly the courts feel themselves bound to deal with these statutory liens is exemplified by *Daley* v. *Lumber Co., 70 N. J. Eq. (4 Robb.) 343; affirmed, 71 Atl. Rep. 1133.* In a case of this sort all the claimants are, in a sense, actors. I do not

think that each actor is obliged to give notice that all the other actors have commenced suit or are parties to a suit against the board. It is enough that each gives notice for himself. If he does, the notice will protect his own claim. If he goes further and mentions other claimants by name, that, I think, will protect those named, for the object of the notice is answered as to them and the statute does not, in terms, require that it be given by anyone in particular. But I do not think that a notice to the financial officer that A is a party to a suit against the board is notice that B is. As none of the notices mention the Tread company I am obliged to conclude that that company has not brought itself within the requirements of section 4.

The notice given by the Trussed Concrete Steel Company was in the form of a letter written by its attorneys, Messrs. Northrop & Griffiths. It contains the required information. The fact that it is in that form and not in the form of a paper entitled in a cause does not make it any the less notice. It mentions the name of the complainant, the National Fire Proofing Company, and although that company gave no notice, I am of opinion that its claim would be saved had it otherwise complied with the requirements of the act. But as I have already said its original notice was not sufficiently verified.

The result is that the Trussed Concrete Steel Company, Lawson & MacMurray and the Alpha Portland Cement Company, whose notices are sufficient, have preferred claims.

The order given by Daly to the Inter-State Engineering Company is disposed of by what I have said of that given to Lawson & MacMurray.

The Bankrupt act does not invalidate the liens created by the statute. *Fehling* v. *Goings, 67 N. J. Eq. (1 Robb.) 386.*